# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**State of Florida**, et al.                )
        *Plaintiffs*,                )
                        )
v.                )  Civil Action No. _____
                        )
**U.S. Department of Health and Human Services**, et al.,                )
        *Defendants*.                )

## DECLARATION OF RACHEL T. KAISER, M.D.

I, Rachel T. Kaiser, M.D., declare as follows:

1. I am over 21 and I am fully competent to make this declaration.

2. These facts are true, correct, and within my personal knowledge. If called to testify, I could and would testify competently to them.

3. I am an emergency room (ER) doctor who sees Medicaid, Medicare, and CHIP patients on a contract basis at Ascension St. Thomas West Hospital in Nashville, TN. I am employed by a physician group, Middle Tennessee Emergency Physicians. My hospital collects patient insurance information, and my physician group handles insurance reimbursement.

4. I am a member of the Catholic Medical Association (CMA) but not a member of the Christian Employers Alliance or the Christian Medical & Dental Associations. I share CMA's positions. I am a past president of CMA's Nashville Guild and its current Tennessee State Director.

5. I care for all patients with respect and without unlawful discrimination. I provide the best medical treatment possible to all.

6. I categorically object to providing, referring for, or affirming any procedures to "transition" a patient's gender.

7. I categorically oppose asking for or using a patient's self-selected gender identity or pronouns for any purpose, including for coding or charting.

8. I categorically oppose allowing males in female private spaces, or vice versa, or following a policy that says (or is interpreted by federal rules to mean) that I do not "discriminate" based on gender identity.

9. I will not provide or refer for "gender transitions."

10. I want to remain free to follow and share my positions when these issues are relevant. For example, I want to be able to warn patients that experimental high-dose cross-sex hormones have not been proven safe.

11. I hold these positions as a matter of sound medical judgment as well as Catholic religious exercise and conscience. If the government requires me to speak or act against my positions, it would require me to speak or act against my religious faith. But I cannot do that, nor will I self-censor. It would cause me immeasurable emotional distress to speak or act against my beliefs, or in any way to harm my patients.

12. My charts always record each patient's biological sex. In conversation I only use pronouns that accord with the patient's biological sex.

13. I treat with increasing frequency patients who identify as transgender, non-binary, or contrary to their sex. I am regularly asked (and expect to continue to be asked) by these patients to use self-selected pronouns, as well as to chart or affirm them in ways contrary to sex. In these cases, I add to the chart that the patient identifies as another sex and I avoid using any pronouns in conversation. But I will not describe a patient's sex incorrectly or use a patient's self-selected pronouns. Using incorrect terms or pronouns can create confusion and result in incorrect care.

14. I have cared for a male patient who identified as female and whose diagnosis was a prostate issue. My chart recorded that he is a

2

biological male who identifies as female. I avoided pronouns altogether with him.

15. In another case, another doctor in the same ER where I was employed at the time treated a girl under 18 years of age whose mother wanted a testosterone prescription refilled for the girl. Had I been treating that patient, I would not have refilled that prescription. State law has since made doing so illegal. I will not violate state law.

16. I have spent time planning to avoid liability under the new rule.

17. The rule seeks to force my hospital and my physician billing group to make me and other employees follow a "nondiscrimination" policy on gender identity and make me attend training on it. But for the rule, this would not be a condition of my employment.

18. I will not follow such a policy. Nor do I want to attend training on such a policy. But I will attend any required training as scheduled. If the rule did not require this training, I would not attend it. I am paid based on how many patients I see. If I miss patient care to attend training, I will receive less compensation than if I were seeing patients. If I work overtime so that no patients miss care, I will be forced to bear the full burden of each hour of mandatory unpaid extra work.

19. Each time my employer requests Medicaid or Medicare payment for my services, the federal government will deem it to be certifying that my employer and I comply with the rule. But I will not fully comply with the rule. No person can certify on my behalf, without making a false or misleading statement, that I will follow the rule, given that I am not and will not be in full compliance with the rule's gender-identity provisions.

20. I will retire rather than harm my patients or lie to them.

21. When I have to decide whether to follow the rule—or risk losing my medical practice—I won't know whether the federal government will exempt my hospital, my physician group, or me.

I declare under 28 U.S.C. § 1746 and under penalty of perjury that this declaration is true and correct based on my personal knowledge.

Executed this 5th day of MAY, 2024 at 5:00, Pm.

*Rachel Kai MD*
Rachel T. Kaiser, M.D.

4