# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

    Plaintiffs,

v.                                        Case No. 4:22-cv-00325-RH-MAF

JASON WEIDA, et al.,

    Defendants.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE OR, ALTERNATIVELY, TO
CLARIFY THE COURT'S JUDGMENT**

In its Final Judgment, this Court "declared that Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid *to the extent they categorically ban* Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria." Doc.247 at 1 (emphasis added). This Court further required the Defendants to approve Medicaid coverage for the Plaintiffs' gender dysphoria treatments, "as recommended by their multidisciplinary teams." *Id.* at 2. Though Defendants have appealed this Court's Final Judgment, they have not sought a stay, and have otherwise complied with the Final Judgment. As such, there is no need for an order to enforce. Nor is there any basis for the Plaintiffs to seek clarification or expansion of the Final Judgment.

## BACKGROUND

The Plaintiffs filed this case on September 7, 2022, alleging that Florida Administrative Code Rule 59G-1.050(7) unlawfully discriminated against them in violation of the Equal Protection Clause of the Fourteenth Amendment, Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), and the Medicaid Act's EPSDT and Comparability Requirements. *See generally* Doc.1. After the Florida Legislature adopted § 286.31(2) of the Florida Statutes, the Plaintiffs amended their complaint to challenge the statute as well as the rule. *See* Doc.246 at 10. They never sought or obtained class certification.

On September 12, 2022, the Plaintiffs moved for a preliminary injunction. During the hearing on the motion, the Defendants advised this Court that, on a showing of exceptional circumstances under § 120.542 of the Florida Statutes, individual patients could obtain a variance or waiver from Rule 59G-1.050(7) to allow them to secure Medicaid coverage for the gender dysphoria treatments at issue. *See* Doc.62 at 92:24–94:7 (Transcript of Proceedings). In its order denying Plaintiffs' motion, this Court referred to this representation as a "basis for this order denying a preliminary injunction and will bind the defendants as the case goes forward." Doc.64 at 7.

Following a seven-day bench trial, this Court ultimately "declared that Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid *to the extent they categorically ban* Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria." Doc.246 at 53 (emphasis added);

2

Doc.247 at 1 (emphasis added). This Court further required the Defendants to "approve Medicaid payment for services rendered" "for the evaluation, diagnosis, and treatment of the plaintiffs August Dekker, Brit Rothstein, Susan Doe, and K.F. for gender dysphoria, including with puberty blockers and cross-sex hormones, as recommended by their multidisciplinary teams." Doc.246 at 53-54; Doc.247 at 2. It explained that "[t]hese plaintiffs are Medicaid beneficiaries who are entitled to payment, as a matter of medical necessity, for puberty blockers or cross-sex hormones as appropriately determined by their multidisciplinary teams of providers." Doc.246 at 53.

On June 27, 2023—within one week of the entry of the Court's Final Judgment—the Defendants sent the Plaintiffs' counsel an email explaining "how the Defendants read the injunction so that [they] may seek clarification from the District Court, if needed." **Exhibit A** (Email from M. Jazil to O. Gonzalez-Pagan). The email advised that the "Defendants will not enforce § 286.31(2)'s prohibition on 'managed care plan[s] providing services under part IV of chapter 409'" because "[t]he best and most obvious reading of this statutory provision is that it serves as a categorical ban on the use of puberty blockers and cross-sex hormones." *Id.* The email further advised that the "Defendants will enforce rule 59G-1.050(7) to bar the use of puberty blockers and cross-sex hormones unless someone submits [a petition for] and obtains a [] variance or waiver under § 120.542 of the Florida Statute[s]." *Id.* The email explained that "[b]ased on the District Court's reasoning, someone could submit a petition noting a gender dysphoria diagnosis from the type of multidisciplinary team the District Court

3

referenced and relied upon, and a treatment recommendation that includes puberty blockers or cross-sex hormones." *Id.* Finally, the email advised that "[t]he named Plaintiffs need not apply for a variance or waiver because the District Court conducted the necessary assessment and determined Medicaid payments for the named Plaintiffs must be approved." *Id.*[1]

Also on June 27, 2023, Secretary Weida and AHCA staff held a telephonic conference call with all ten of Statewide Medicaid Managed Care ("SMMC") health plans operating under contract with AHCA. **Exhibit B** (Declaration of Pamela Hull). During that call, Secretary Weida advised the SMMC plans that Medicaid coverage must be provided for the gender dysphoria treatments provided to each of the named Plaintiffs in this case. *Id.* And the Secretary advised the SMMC plans that other Medicaid-eligible patients could petition for a variance or waiver from Rule 59G-1.050(7) to obtain Medicaid coverage for gender dysphoria treatments. *Id.*

On October 4, 2023, the Plaintiffs filed their "Motion to Enforce the Court's Judgment or, Alternatively, to Clarify the Court's Judgment." Doc.258. The motion asks this Court to "enforce its Judgment, as well as its Findings of Fact and Conclusions of Law, by instructing Defendants that the Court's declaratory relief prevents them from

---

[1] As noted above, the Defendants have appealed this Court's Findings of Fact and Conclusions of Law, as well as the Final Judgment. Doc.248. The Defendants dispute the Court's rulings on Plaintiffs' substantive claims, as well as the conclusion that hormonal treatment is medically necessary to treat gender dysphoria. Nevertheless, the Defendants are acting in accordance with the Court's Final Judgment pending resolution of the appeal.

enforcing Rule 59G-1.050(7) of the Florida Administrative Code and issuing any other remedial relief it believes appropriate." *Id.* at 17. Alternatively, the "Plaintiffs request that the Court clarify its decision and order to make clear that the Rule, as adopted, is unlawful, *or grant broader injunctive relief* preventing Defendants from enforcing the Challenged Exclusion." *Id.* (emphasis added).

## ARGUMENT

I. **Plaintiffs' motion to enforce must be denied because Defendants are complying with the Court's Final Judgment.**

The Court's Final Judgment is clear:  Rule 59G-1.050(7) is invalid only "to the extent [it] categorically ban[s] Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria." Doc.247 at 1. As explained above, the Defendants are not enforcing Rule 59G-1.050(7) as a categorical ban on Medicaid coverage of hormonal treatment for gender dysphoria. Rather, the Defendants continue to respect the ability of gender dysphoria patients to seek a variance or waiver of the rule pursuant to § 120.542.

Section 120.542 is a generally applicable statute that provides for issuance of a variance or waiver of any agency rule "when the person subject to the rule demonstrates that the purpose of the underlying statute will be or has been achieved by other means by the person and when application of a rule would create a substantial hardship or would violate principles of fairness." Fla. Stat. § 120.542(2). As this Court recognized in its Findings of Fact and Conclusions of Law, in the case of Rule 59G-1.050(7),

5

§ 409.905(9) of the Florida Statutes is the relevant provision being implemented; that statute requires AHCA to pay for services and procedures that are "medically necessary." *Id.*; *see also* Doc.246 at 7. Based on the logic of this Court's Final Judgment, a gender dysphoria patient may be able to obtain a variance or waiver of Rule 59G-1.050(7) if he or she demonstrates that a multidisciplinary team of providers of the type referenced by this Court has determined that hormonal treatment is medically necessary and that refusal of Medicaid coverage for such treatment would create substantial hardship under the particular circumstances at hand.

Contrary to the Plaintiffs' assertion, the variance and waiver process is not a "red herring." Doc.258 at 15. It is a statutorily prescribed right for any substantially affected person to seek relief from an agency rule. Any agency decision made in response to a petition for variance or waiver is subject to administrative and judicial review under Florida's Administrative Procedure Act. *See* Fla. Stat. §§ 120.569 and 120.57 (administrative review); and § 120.68 (judicial review). True, no variance or waiver of Rule 59G-1.050(7) has been granted to date. Crucially, however, no petition for variance or waiver from Rule 59G-1.050(7) has been submitted; AHCA cannot consider, review, or act on a petition unless or until it is actually submitted. **Exhibit B** (Declaration of Pamela Hull).

Given the continued ability of Medicaid-eligible gender dysphoria patients to petition for a variance or waiver on a case-by-case basis, the Defendants are not enforcing Rule 59G-1.050(7) as a categorical ban on Medicaid coverage for hormonal

treatments for gender dysphoria. It follows that there is no need for an order to enforce the Court's Final Judgment.

II. **Plaintiffs' alternative motion must be denied because the alternative relief sought by Plaintiffs is improper, untimely, and jurisdictionally unavailable.**

In accordance with the Court's Final Judgment, the Plaintiffs have obtained the relief they sought—Medicaid coverage for the costs of their hormonal treatments for gender dysphoria. Doc.246 at 53-54; Doc.247 at 2. That cannot be disputed. Yet the Plaintiffs now improperly seek to have the Court "clarify[] the scope of its declaratory relief" "to make clear that Defendants cannot enforce the Challenged Exclusion against anyone." Doc.258 at 17.

The Plaintiffs have not cited and cannot cite any authority entitling them to such relief on behalf of nonparties. To the contrary, the Eleventh Circuit has long held that, "in a suit brought in the plaintiff's individual capacity, injunctive relief benefiting nonparties is not required if it in no way relates to the vindication of the plaintiff's rights." *Dybczak v. Tuskegee Institute*, 737 F.2d 1524, 1527 (11th Cir. 1984). Here, the requested relief does not in any way relate to the vindication of the Plaintiffs' rights. Those rights have already been vindicated. The alternative motion to clarify should be denied for this reason alone.

Additionally, Plaintiffs' alternative motion for the Court to "expand[] the scope of its injunctive relief" or "grant broader injunctive relief" should be denied as time-barred by Federal Rule of Civil Procedure 59(e). Doc.258 at 1-2, 17-19. Rule 59(e)

7

expressly provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Federal courts "may not extend the time to file a Rule 59(e) motion." *Green v. DEA*, 606 F.3d 1296, 1300 (11th Cir. 2010); *see also* Fed. R. Civ. P. 6(b)(2). But that is precisely what Plaintiffs' alternative motion requests the Court to do—to reopen its June 22, 2023 Final Judgment and alter or amend it long after the deadline to file a Rule 59(e) motion expired on July 20, 2023.

Plaintiffs' alternative motion to expand the scope of injunctive relief or grant broader injunctive relief should be denied for an additional reason: the Court lacks jurisdiction to alter or amend its Final Judgment during the pendency of the appeal therefrom. "In general, [the] filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *accord Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023). An exception exists where a timely Rule 59(e) motion is filed (either before or after the filing of a notice of appeal). *See* Fed. R. App. P. 4(a). That is because Appellate "Rule 4(a) was specifically amended in response to *Griggs* and now provides that a notice of appeal filed during the pendency of a [timely] Rule 59 motion is simply suspended," thus allowing a "district court [to] retain[] jurisdiction to consider the [timely] Rule 59 Motion." *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 745-46 (11th Cir. 2014).

Here, the State's notice of appeal "is an event of jurisdictional significance." *Griggs*, 459 U.S. at 58. Because the time to file a Rule 59(e) motion has expired, the notice of appeal has "divest[ed]" the Court of jurisdiction to alter or amend its Final Judgment. *See, e.g.*, *Griggs*, 459 U.S. at 58; *cf. Cornea v. United States AG*, No. 18-13694-DD, 2018 U.S. App. LEXIS 34707, at *2 (11th Cir. Dec. 10, 2018) (district court retained jurisdiction to consider a Rule 59(e) motion that was filed within 28 days of a judgment under Appellate Rule 4(a)).

## CONCLUSION

Because the Defendants are not enforcing Rule 59G-1.050(7) as a categorical ban on Medicaid coverage for hormonal treatments for gender dysphoria, there is no need for an order to enforce this Court's Final Judgment. Nor is there a basis for the Plaintiffs to seek clarification of the Court's Final Judgment or expansion of its injunctive relief. The Plaintiffs' motion should be denied.

Respectfully submitted,

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Gary V. Perko (FBN 855898)
Michael Beato (FBN 1017715)
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
mbeato@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St., Suite 500
Tallahassee, FL 32301 (850) 270-5938
*Counsel for Secretary Weida and the Agency for Health Care Administration*

9

## LOCAL RULE CERTIFICATIONS

The undersigned certifies that this memorandum contains 2,125 words, excluding the case style and certifications.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on October 18, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

| | |
|---|---|
| **From:** | Mohammad O. Jazil |
| **To:** | Omar Gonzalez-Pagan; Gary V. Perko; Michael Beato; Sheeran, Andrew |
| **Cc:** | Katy DeBriere; Abigail Coursolle; Simone Chriss; Chelsea Dunn; Altman, Jennifer; Rivaux, Shani; Miller, William C.; Shaw, Gary J.; Little, Joe |
| **Subject:** | Dekker v. Weida - Communication Post Ruling |
| **Date:** | Tuesday, June 27, 2023 4:03:32 PM |
| **Attachments:** | image905542.png<br>image947291.png<br>image047364.png<br>image782702.png |

Good afternoon, counsel,

As you know, yesterday, the Defendants appealed the District Court's Findings of Fact and Conclusions of Law, as well as the Judgment.

The District Court "declared that Florida Statutes § 286.31(2) and Florida Administrative Code rule 59G-1.050(7) are invalid to the extent they categorically ban Medicaid payment for puberty blockers and cross-sex hormones for the treatment of gender dysphoria." Doc.246 at 53. The District Court then required the Defendants to "approve Medicaid payment for services rendered" "for the evaluation, diagnosis, and treatment of the plaintiffs August Dekker, Brit Rothstein, Susan Doe, and K.F. for gender dysphoria, including with puberty blockers and cross-sex hormones, as recommended by their multidisciplinary teams." *Id.*

Defendants will, of course, comply with the District Court's injunction. I write to you now to better explain how the Defendants read the injunction so that you may seek clarification from the District Court, if needed.

First, Defendants will not enforce § 286.31(2)'s prohibition on "managed care plan[s] providing services under part IV of chapter 409." The best and most obvious reading of this statutory provision is that it serves as a categorical ban on the use of puberty blockers and cross-sex hormones. Consistent with the District Court's direction, Defendants will not enforce it until or unless a higher court says otherwise.

Second, however, Defendants will enforce rule 59G-1.050(7) to bar the use of puberty blockers and cross-sex hormones unless someone submits and obtains a petition for variance or waiver under § 120.542 of the Florida Statute. As you know, the Defendants have consistently maintained that the rule is *not* a categorical ban. *See* Doc.64 at 6-7 (recognizing same). Based on the District Court's reasoning, someone could submit a petition noting a gender dysphoria diagnosis from the type of multidisciplinary team the District Court referenced and relied upon, and a treatment recommendation that includes puberty blockers or cross-sex hormones. The named Plaintiffs need not apply for a variance or waiver because the District Court conducted the necessary assessment and determined Medicaid payments for the named Plaintiffs must be approved.

Many thanks,
Mo



Exhibit A



**PRIVILEGED AND CONFIDENTIAL**
This communication and any accompanying documents are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon this communication is strictly prohibited. Moreover, any such disclosure shall not compromise or waive the attorney-client, accountant-client, or other privileges as to this communication or otherwise. If you have received this communication in error, please contact me at the above email address. Thank you.

**DISCLAIMER**
Any accounting, business or tax advice contained in this communication, including attachments and enclosures, is not intended as a thorough, in-depth analysis of specific issues, nor a substitute for a formal opinion, nor is it sufficient to avoid tax-related penalties. If desired, Holtzman Vogel Baran Torchinsky & Josefiak PLLC would be pleased to perform the requisite research and provide you with a detailed written analysis. Such an engagement may be the subject of a separate engagement letter that would define the scope and limits of the desired consultation services.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUGUST DEKKER, et al.,

    Plaintiffs,

v.                                               Case No. 4:22-cv-00325-RH-MAF

JASON WEIDA, et al.,

    Defendants.

_____/

## DECLARATION OF PAMELA HULL

I, Pamela Hull, hereby declare and state as follows:

    1.    I am over the age of 18, of sound mind, and in all respects competent to testify. I have personal knowledge of the information contained in this Declaration and would testify completely to those facts if called to do so.

    2.    I am employed by the Florida Agency for Healthcare Administration as the Agency's Assistant Deputy Secretary for Medicaid Operations. In this capacity, I oversee the operational aspects of Florida's Medicaid Program which includes the Bureaus of Plan Management Operations and Recipient and Provider Assistance.

    3.    On June 27, 2023, I participated in the telephonic conference with Secretary Jason Weida and representatives of all of the ten Statewide Medicaid Managed Care ("SMMC") health plans operating under contract with the Agency, including:

- Aetna

**Exhibit B**

- AmeriHealth
- Children's Medical Services Plan
- Community Care Plan
- Florida Community Care
- Humana
- Molina
- Simply
- Sunshine
- United

The CEO or Plan President and one other staff member for each Plan participated in the call.

4. One of the purposes of the call on June 27, 2023, was to inform the Plans of the implications of the Court's Final Judgment in this case. During the call, Secretary Weida advised the Plans that Medicaid coverage must be provided for the gender dysphoria treatments provided to each of the named Plaintiffs in this case. The Secretary also advised the Plans that other Medicaid-eligible patients could petition for a variance or waiver from Florida Administrative Code Rule 59G-1.050(7) to obtain Medicaid coverage for gender dysphoria treatments.

5. To date, no petition for variance or waiver from Rule 59G-1.050(7) has been submitted. AHCA cannot consider, review, or act on a petition unless or until it is actually submitted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this <u>18th</u> day of October 2023.

<u>/s/ Pamela Hull</u>
Pamela Hull